## Gibson v. Western & Southern Life Insurance Company, et al.

(Decided December 18, 1914.)

### Appeal from Kenton Circuit Court (Common Law and Equity Division).

Taxation—Payment of Taxes by Stranger in Title—Subrogation.— In the absence of a statute giving the right of subrogation, one who has no interest to protect, and who pays taxes on property under an agreement with the owner that he is to be subrogated to the lien of the taxing authority, is not entitled to subrogation as against persons having valid liens on the property.

A. E. STRICKLETT for appellant.

S. D. ROUSE for appellee, Western & Southern Life Insurance Company.

ROBT. C. SIMMONS for appellees, Lubrecht and Phillips.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Sidney Arthur and others are the owners of two apartment buildings in the city of Covington, and the lots on which they are located. On April 29, 1905, they mortgaged one of the buildings to the Western & Southern Life Insurance Company to secure a loan of $27,000, for which they executed their promissory note payable 11 years from date. Thereafter they mortgaged the same building to Thomas H. Phillips and George Leubrecht to secure certain promissory notes aggregating $6,900. On August 8, 1906, the same parties mortgaged the other building to the Western & Southern Life Insurance Company to secure a loan of $30,000, represented by nine promissory notes. While all these mortgages were in full force and effect, the owners defaulted in the payment of half the city taxes for the year 1908 and all the taxes

for the years 1910 and 1911. They also failed to pay the State and county taxes for the year 1910. The city of Covington, through its delinquent tax collector, regularly advertised the taxes as delinquent on each of said parcels of real estate for said years. The sheriff of Kenton county advertised and sold each of the parcels for State and county taxes for the year 1910, and purchased same in the name of the Commonwealth. Thereafter suit was instituted by the county attorney to enforce the lien of the Commonwealth. The city taxes on the first parcel of land for the years mentioned were $1,843.27. The State and county taxes, with interest and penalty, were $418.44. The city taxes on the second parcel of land amounted to $1,827.44; while the State and county taxes, including interest, costs and penalty, amounted to $418.44. The city of Covington, through its delinquent tax collector, was about to institute action in the Kenton Circuit Court to enforce its lien on said parcels of land for the taxes due for the years above set forth. Sidney Arthur, one of the owners of the property, prevailed upon appellant, Loretta B. Gibson, to pay all the foregoing taxes under an agreement whereby she should be subrogated to the rights of the taxing authorities to the extent of the taxes so paid by her. On February 9, 1912, she paid the city of Covington, the county of Kenton, and the State of Kentucky, all the taxes due them.

On November 29, 1912, the Western & Southern Life Insurance Company brought two suits to enforce its mortgage liens on the two parcels of land. Phillips and Leubrecht became parties and asserted a lien on tract No. 1 superior to all other liens except that of the Western & Southern Life Insurance Company. Thereafter appellant, Loretta B. Gibson, became a party to the action, and filed a petition alleging substantially the facts above set out. She further alleged that all the mortgages above referred to were in full force and effect at the time the taxes became delinquent and were paid by her, and that by reason of her payment of the taxes the mortgagees were benefited in that the owners of the buildings were enabled to pay interest on the mortgage liens which the mortgagees would not otherwise have received. It was further alleged in her petition that the liens for said taxes were not to be canceled, but that the delinquent tax collector and the county clerk were to make such entries on their books as would show that such tax bills had been paid by and assigned to the plaintiff, in order that the

lien for the same might remain unimpaired. The delinquent tax collector endorsed on the city tax bills the fact that payment was received of appellant, and that the bills, including interest and penalties, were assigned to her. The county clerk noted on his books the fact that payment was made by appellant. Appellant asked that she be subrogated to the liens of the city, county and State for the taxes so paid by her, and that her liens be adjudged superior to all other liens or encumbrances on the two parcels of land.

A demurrer was sustained to the petition and the petition dismissed. From that judgment this appeal is prosecuted.

Briefly stated, appellant's contention is that as she paid the taxes at the instance of the owners of the property, and with the distinct agreement that she was to be subrogated to the rights of the taxing authorities, she is not a volunteer, and is therefore entitled to a lien on the property under and by virtue of the general doctrine of subrogation, applicable to cases where a third party, by agreement with the owner, discharges a lien or encumbrance on the owner's land. 27 Cyc., 468.

In this State we have no statute authorizing assignment of tax claims by the taxing authorities, and subrogating a stranger who pays taxes under an agreement with the owner that he will be so subrogated to the lien of the taxing authority. The only statutes which we have on the subject provide that a lienholder or the occupant or tenant of land, or the bailee or person in possession of personal property, may pay the tax which the owner ought to pay, and recover from the owner, and giving him a lien on the property taxed to secure the payment thereof. Kentucky Statutes, Sections 4032, 4033. We also have a statute providing that the purchaser of property at an invalid tax sale shall have a lien on the property for the amount of taxes and costs paid by him, and for which the property is liable. Section 4636. Aside from the authority contained in these statutes, it is also generally held that a person who has an interest in property, and who, in order to protect that interest, is compelled to pay the taxes thereon, is entitled to subrogation. This rule is applied in favor of mortgagor and mortgagee, vendor and vendee, grantor and grantee, tenants for life, tenants in common, lessor and lessee, executors, etc. Cooley on Taxation, pages 812-824. Then, too, in some jurisdictions subrogation is allowed where payment is

made under a mistake as to ownership. Kemp v. Cossart, 47 Ark., 62; Goodnow v. Moulton, 51 Iowa, 555; Ingersoll v. Jeffords, 55 Miss., 37; Shaefer v. Causey, 8 Mo. App., 142, though this doctrine is denied by the Federal Supreme Court. Homestead County v. Valley R. Co., 17 Wall., 153.

In the case before us appellant had no interest whatever in the property. She did not pay the taxes under a mistake that she owned the property. She paid the taxes at the instance and request of the owner, and under an agreement that she was to be subrogated to the lien of the city, county and State. As before stated, there is no statute in this State conferring on tax collecting officers the power to assign tax claims. The State and its various subdivisions are given broad powers in matters of taxation. These powers are conferred on State and municipal officers to be exercised by them and not to be delegated to others. McIrney v. Reed, 23 Iowa, 410. Therefore, in the absence of statutory authority, the taxing officers upon whom these broad powers are conferred have no authority to assign tax claims and vest in the assignee the power to enforce their collection. This disposes of appellant's case in so far as she relies on the assignment by the delinquent tax collector. Counsel for appellant insist that appellant is not a volunteer because of the special agreement. It must be remembered, however, that a tax is not a debt in the ordinary sense of the word, and is not, therefore, subject to the control of the parties. As neither the State nor any of its municipalities may assign their tax claims, we are unable to see upon what theory or sound public policy it can be held that the owner of property can in effect make such an assignment by procuring a stranger in interest to pay the taxes under an agreement that he will be entitled to subrogation. If this were the rule, the effect would be the same as if the taxing authority themselves had made the assignment. In our review of the authorities bearing on the question, we have been unable to find any well considered case holding that a stranger who has no interest to protect is entitled to subrogation where he paid the taxes under a mere agreement with the owner that he was to be subrogated. In every case we have been able to find, subrogation is applied under the authority of particular statutes, or on the ground that the payment was made to protect some property right. We are not, therefore, disposed to hold that all the machinery for

collecting taxes may be turned over to an entire stranger in interest under and by virtue of a mere agreement made with the owner of the property. In our opinion, sound public policy forbids it. Powers intended to be exercised by public officers would be conferred on private individuals. Not only so, but mortgagees and other lien holders would be frequently placed at a great disadvantage. They might go on for years in the belief that the taxes had been regularly paid by the owner, only to find that they had been paid by a stranger who was asserting a lien on the land in an amount sufficient practically to destroy the value of their security.

There is no merit in the contention that mortgagees would not be prejudiced. If the taxes were paid by the owner the lien would be discharged. If paid by a stranger, the lien would continue in force. If not paid by the owner, and the law did not permit a stranger in title to pay them, the mortgagees could take prompt steps to protect their interests. While not a volunteer in the ordinary sense of that word, appellant was a volunteer in its legal sense, for subrogation to the lien of the taxing authorities upon the payment of the taxes was not authorized by any statute, nor was it necessary to protect any interest which she had in the property. We therefore conclude that in the absence of a statute authorizing subrogation, a mere stranger who has no interest in the property to protect, but who pays the taxes thereon merely under an agreement with the owner that he should be subrogated to the lien of the taxing authorities, is not subrogated to such lien as against persons having valid liens on the property.

Judgment affirmed.